IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KURT KALTREIDER, Ph.D. | ) | |
| | ) | |
| v. | ) | NO. 3:12-0450 |
| | ) | |
| S. GUERRY SIMMONS | ) | |

TO: Honorable Aleta A. Trauger, District Judge

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered May 15, 2012 (Docket Entry No. 3), this action was referred to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the motion for summary judgment filed by Defendant S. Guerry Simmons (Docket Entry No. 54), to which the Plaintiff has responded in opposition. See Docket Entry Nos. 98-99. Also before the Court is the Defendant's reply. See Docket Entry No. 102.[1] Set out below is the Court's recommendation for disposition of the motion.

---

[1] By Order entered October 22, 2013 (Docket Entry No. 87), the Court found that the Plaintiff's original response (Docket Entry Nos. 75-76) to the motion for summary judgment was timely filed but was procedurally deficient and provided him with time to file a new response. The Court granted the Defendant leave to file a reply to the Plaintiff's new response but directed that no sur-reply from the Plaintiff was permitted. Nonetheless, the Plaintiff filed a sur-reply (Docket Entry No. 103), which the Defendant has moved to strike. See Docket Entry No. 104. By contemporaneous Order, the Court has granted the motion to strike. Accordingly, the Court has not considered the Plaintiff's sur-reply.

# I. BACKGROUND[2]

The Plaintiff is currently a resident of Maryland. He holds advanced degrees in philosophy and clinical psychology and has a particular interest in the study of Formal Axiology, which he describes as the "mathematics of value." See Amended Complaint (Docket Entry No. 17), at ¶ 6. During the 1970's and early 1980's, the Plaintiff researched the application of Formal Axiology to the behavior of the stock market and developed mathematical formulas and derivatives ("the Formulas") for predicting the behavior of publically traded stocks. During the 1980's, the Plaintiff refined the Formulas while working for investment management companies.

Sometime in 1988 or 1989, the Plaintiff first met the Defendant, who was also employed by an investment management company, and the two men developed a professional relationship based on their mutual interest in the field of investment management. The Plaintiff, believing in the merit of the Formulas, shared with the Defendant some information about the Formulas and the Plaintiff's methodology for making investment decisions, although the amount and nature of the information shared by the Plaintiff is disputed. Both men continued to work in the investment management field and maintained their professional relationship. At some point during 1994, they entered into a working arrangement that is at the center of this lawsuit and the exact nature of which is hotly contested by the parties. Unfortunately for all involved, the arrangement was not memorialized in writing.

The Plaintiff alleges that he and the Defendant entered into an oral agreement for the mutual benefit of both men whereby the Defendant was given permission to use the Formulas, the Plaintiff's

---

[2] The factual statements set out in Section I are summarized from the parties' pleadings and summary judgment filings and are not intended as ultimate findings of fact made by the Court but merely as a summary of relevant background facts.

research, and the Plaintiff's investment methodologies in order to develop and manage investment portfolios and attract clients and, in return, would make payments to the Plaintiff of a portion of the income derived from the Defendant's investment management endeavors. Although the Plaintiff would continue to engage in research, refinement, and advice regarding the Formulas, he would not engage in active participation in any portfolio management.

In contrast, the Defendant denies that an oral agreement of any kind was made and asserts that, prior to 1994, he was already using the Formulas in his management of investment portfolios. He asserts that he believed it would be useful to retain the Plaintiff as a consultant because he anticipated that the Plaintiff would develop new and improved investment techniques and methodologies and that he thus made payments to the Plaintiff as consulting fees, not pursuant to any agreement or contract. Although the Defendant admits to using the Formulas in his management of investment portfolios for some period of years, he contends that the Formulas became ineffective and he eventually ceased using the Formulas, instead relying upon new portfolio selection processes and methodologies that he developed independently of the Formulas and of the Plaintiff.

Although the nature and scope of the arrangement between the Plaintiff and Defendant is disputed, it is undisputed that the Plaintiff received regular payments from the Defendant for approximately 14 years. The Plaintiff was initially paid directly from the Defendant until some point in the late 1990's or early 2000's when the Defendant became employed at Weaver C. Barksdale & Associates ("Barksdale & Associates"), an investment management firm, after which time the Plaintiff began to receive payments from the Defendant via Barksdale & Associates.[3] The payments from Barksdale & Associates were listed as non-employee compensation on IRS 1099-MISC forms

---

[3] The Defendant is no longer employed by Barksdale & Associates.

the Plaintiff received from Barksdale & Associates. The payments continued until March 2008, and the Plaintiff alleges that he had received at total of $662,000.00 in payments from the Defendant up to that date.

The March 2008 payment was the last payment made to the Plaintiff, and, on April 30, 2008, the Defendant filed an action for declaratory judgment against the Plaintiff in this Court. See Simmons v. Kaltreider, No. 3:08-0444. In that action, the Defendant asserted that he no longer utilized the Formulas, that he relied on formulas and methodologies that he had developed, that the Plaintiff was providing nothing of value to him, and that he had no further need for consultation with the Plaintiff. The Defendant sought an order declaring that he did not owe any duty or obligations to the Plaintiff. However, by Order entered January 27, 2009, the Defendant's motion to voluntarily dismiss his declaratory judgment action was granted and the action was dismissed without prejudice and without any resolution of the dispute between the parties.

Whether the Plaintiff and the Defendant interacted over the next three years is unclear, but on May 3, 2012, the Plaintiff filed the instant action pro se and in forma pauperis against the Defendant, who is a resident of Tennessee, asserting diversity jurisdiction under 28 U.S.C. § 1332. The Plaintiff alleges that he and the Defendant had entered into an oral "joint venture agreement" in 1994 for the use and development of the Formulas and for a division of profits derived from the use of the Formulas as applied to clients' investments in publically traded stocks. See Amended Complaint (Docket Entry No. 17), at ¶ 9. The Plaintiff alleges that the terms of this agreement were as follows:

(1) Simmons would use the Formulas and Kaltreider's investment selection procedures in recommending investments to Simmons' clients;

4

(2) Simmons would use Kaltreider as a reference for the validity of the Formulas and investment procedures, including Kaltreider's twenty-three year track record in the investment world;

(3) Simmons would have access to all of Kaltreider's past records, investment selection procedures, and whatever other information was necessary to implement the Formulas for the investments in question;

(4) Kaltreider would be available to do research, while Simmons would serve as the salesman for the joint venture, set up the computer systems needed for the business, and run the business on a day-to-day basis;

(5) Kaltreider would continue to work and do research for his investment client, First Wisconsin. The revenues from First Wisconsin would go to Kaltreider, and not to the joint venture;

(6) Simmons would receive 90% and Kaltreider would receive 10% of the first $50,000.00 of the gross receipts for the joint venture each year. Simmons would receive 75% and Kaltreider would receive 25% of the annual gross receipts above $50,000.00;

(7) the same division of annual gross receipts would be applied to any and all monies generated by either Kaltreider or Simmons for asset management or sales research, excluding the Plaintiff's income from First Wisconsin; and

(8) Simmons was free to improve upon anything that Kaltreider had done with the Formulas in their implementation with investments. However, Simmons and Kaltreider agreed that Simmons would not make changes to the Formulas or the implementation procedures without at least five (5) years of back-testing, and then only in the event that the changes added significant value to investments.

Id. at 3-4, ¶ 9.

The Plaintiff contends that the Defendant breached the oral agreement by 1) making changes to the Formulas and implementation procedures without five (5) years of back-testing, 2) altering the Formulas and implementation procedures without the Plaintiff's approval or involvement, and 3) ceasing payments to the Plaintiff as of June 30, 2008. Id. at ¶ 12. As monetary relief, the Plaintiff seeks all sums which have not been paid under the agreement from 1995 through March 2008, and

5

all sums due under the agreement from April 1, 2008, to date. Id. at ¶ 13. The Plaintiff also seeks a full accounting of all income received by the Defendant for his services as an investment counselor since 1994, an accounting of income information from Barksdale & Associates, and the production of computer or data discs containing all formulas and procedures utilized by the Defendants from 1994 to date. Id. at ¶ 12.

## II. MOTION FOR SUMMARY JUDGMENT

The Defendant argues that he is entitled to summary judgment as a matter of law because the undisputed facts show that the parties never entered into an oral contract. Specifically, the Defendant contends that the Plaintiff cannot show that there was a meeting of the minds between the parties about clearly defined and mutually agreed upon terms of a contract. Alternatively, the Defendant argues that, even if a contract did exist, the Defendant did not breach such a contract and unequivocally terminated the contract in April of 2008 when he filed the declaratory judgment action. The Defendant argues that the Plaintiff has admitted that as of April of 2008, he had been paid in full for the formulas he allegedly allowed the Defendant to use. Additionally, the Defendant contends that the Plaintiff is not entitled to any compensation from the Defendant under any other theory because Plaintiff has not provided anything of value to the Defendant since, at the latest, 2007, and that the Plaintiff's request for an accounting lacks merit. In support of his motion, the Defendant relies upon his own declaration (Docket Entry No. 56), excerpts from the Plaintiff's deposition (Docket Entry No. 57-1), and the Plaintiff's discovery responses (Docket Entry Nos. 57-2 and 57-3).

6

The Plaintiff responds by contending that both facts and common sense show that an oral contract existed as evidenced, in part, by the substantial sums of money that were regularly paid to the Plaintiff by the Defendant. The Plaintiff further disputes many of the factual assertions made by the Defendant and asserts that there is evidence supporting his claim of breach of contract. In support of his response, the Plaintiff relies upon his on declaration (Docket Entry No. 76) and upon an array of various documents. See Docket Entry Nos. 98-1 through 98-17.

In reply, the Defendant asserts that the Plaintiff has failed to rebut the Defendant's arguments that no enforceable contract exists and that the Plaintiff is not entitled to relief under any theory. See Docket Entry No. 102. The Defendant essentially argues that the evidence offered by the Plaintiff is not sufficient to support his claims or to even raise genuine issues of material fact.

## III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary

judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

IV. ANALYSIS

A federal court sitting in a diversity case generally applies the law of the forum state. Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011). Neither party has argued that Tennessee law does not apply. Accordingly, the Court shall apply Tennessee law to the dispute.

With respect to the existence of an enforceable contract, the Defendant argues that the Plaintiff cannot set forth evidence showing that the Plaintiff and the Defendant mutually assented to the terms of the alleged oral contract as the Plaintiff sets out in the Amended Compliant. The Defendant contends that the parties' differing versions of the parties' expectations of the arrangement between them evidences a lack of mutual assent to clearly defined terms which requires summary judgment in the Defendant's favor on this issue. See Defendant's Memorandum (Docket Entry No. 55), at 6-8. The Defendant also points to evidence of actions by both the Plaintiff and the Defendant that the Defendant contends are inconsistent with mutual assent to the terms of the purported contract. Id. at 6-7.

The Court is not persuaded by the Defendant's argument. Unless required by law, contracts need not be in writing in order to be enforceable. Bill Walker & Assoc., Inc. v. Parrish, 770 S.W.2d 764, 771 (Tenn.Ct.App. 1989). The Defendant correctly maintains that the party seeking to enforce an oral contract must prove (1) the parties' mutual assent to the contract's terms and (2) that the terms are sufficiently definite to be enforceable. Castelli v. Lien, 910 S.W.2d 420, 426-27 (Tenn.Ct.App. 1995). However, the facts before the Court are not so one sided on the issues of mutual assent and the presence of clearly defined contract terms that the only reasonable interpretation of the facts is one that favors the Defendant. Although the Plaintiff's pro se

9

presentation of his case is somewhat difficult to follow at times, the Plaintiff has presented to the Court sufficient evidence to create genuine issues of material fact on the issue of the existence of a contract that cannot be resolved in the context of summary judgment. The Plaintiff's declaration and discovery responses sufficiently support his version of what the Plaintiff and the Defendant agreed to in 1994, and create genuine issues of material fact when contrasted to the Defendant's declaration. See Docket Entry No. 76, at ¶¶ 6, 9, 11, and 12-13; and Docket Entry No. 57-3, at ¶ 5. To the extent that the Defendant relies on Castelli for the proposition that a Plaintiff cannot, as a matter of law, prove "clearly defined, mutually agreed upon terms" in a situation in which a plaintiff and a defendant present different versions of events surrounding a purported contract, the Court notes that the Castelli opinion was made in the context of an appeal from a judgment after a full trial, not in the context of whether summary judgment was appropriate. See also Davidson v. Holtzman, 47 S.W.3d 445, 454 (Tenn.Ct.App. 2000) (" the only evidence . . . regarding the parties' agreement was the testimony of the parties and their correspondence after the agreement was allegedly made. Because the parties' testimony was sharply conflicting, the jury was required to assess the credibility of the witnesses.")

Additionally, "destruction of contracts because of uncertainty has never been favored by the law," see Gurley v. King, 183 S.W.3d 30, 34 (Tenn.Ct.App. 2005), and mutual assent to contract terms can be established by evidence of a course of dealings between the parties or by other evidence of conduct or circumstances indicating that a party has performed pursuant to the terms of a purported contract. Jones v. LeMoyne-Owen College, 308 S.W.3d 894, 905-06 (Tenn.Ct.App. 2009); Burton v. Warren Farmers Coop., 129 S.W.3d 513, 521 (Tenn.Ct.App. 2002); T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC., 93 S.W.3d 861, 865-66 (Tenn.Ct.App. 2002). See also

10

Betterton Management Serv. v. Whittemore, 769 S.W.2d 214, 216 (Tenn.Ct.App. 1989) (defendant was estopped from denying assent and a meeting of the minds where the parties performed under the alleged agreement for an extended period of time and the defendant made payments to the plaintiff in accordance with the terms of the alleged agreement). Reasonable minds could differ about whether the lengthy period of regular payments from the Defendant to the Plaintiff occurred because, as the Defendant contends, he was paying consulting fees to the Plaintiff as the Defendant deemed appropriate or because the Defendant had agreed to the payment terms of the purported contract. Similarly, the Court is not persuaded that a conclusion that mutual assent was lacking is the only reasonable interpretation of what the Defendant contends is evidence that the parties did not follow the terms of the alleged contract. Such evidence could be reasonably viewed as evidence of non-compliance with the terms of the purported contract instead of a lack of mutual assent. In a situation in which reasonable minds can differ about the interpretation of evidence relating to the formation of a contract and in which witness credibility is an issue, summary judgment should not be granted on the question of whether a contract existed. Gurley, 183 S.W.3d at 42; Davidson supra.

Even if a contract existed, the Defendant argues that the Plaintiff is unable to offer proof supporting his claim that the Defendant breached the contract. The Defendant asserts that the Plaintiff has specifically testified that he is not seeking any damages for amounts that could have been owed to him prior to April of 2008 and has admitted that he accepted all payments from the Defendant until April 2008 as payment in full without any reservation of rights. The Defendant further contends that he unequivocally terminated any contract that existed when he filed his declaratory judgment suit in April 2008. Thus, the Defendant argues that the Plaintiff cannot assert

a claim for breach of contract based on any action taken from April 2008 to the present. See Docket Entry No. 55, at 8.

The Court is also not persuaded by the Defendant's argument that summary judgment is appropriate on the issue of a contractual breach. The Defendant's argument is based entirely upon his contention that he terminated the contract, presuming it existed, when he sought a declaratory judgment in April 2008. See Docket Entry No. 55, at 8. In that action, the Defendant asserted that he no longer relied upon the Formulas and had no continuing obligation to make any payments to the Plaintiff. However, the declaratory judgment action was dismissed without prejudice upon motion of the Defendant.[4] The Defendant had a full opportunity to resolve those issue at the time of his declaratory judgment action but chose not to pursue the action to a resolution. Accordingly, the Defendant cannot now contend that the filing of the declaratory judgment action is conclusive evidence that the purported contract between the Plaintiff and Defendants was terminated as of April 2008, or that the allegations he makes in his defense of the instant action, which are essentially the same as those he made in 2008, are factually correct. In his supporting memorandum, the Defendant has offered no legal support for that argument.

Although Tennessee law holds that, in the absence of a specific termination provision, a contract for an indefinite duration is generally terminable at will by either party upon reasonable notice, McReynolds v. Cherokee Ins. Co., 896 S.W.2d 777, 779-80 (Tenn.Ct.App. 1994), the nature of the contract at issue may be such that the contract, although indefinite in term, is intended by the

---

[4] Like most other issues in the instant lawsuit, the parties even disagree about the reasons behind the Defendant's dismissal of the declaratory judgment action. Compare Simmons Declaration (Docket Entry No. 56), at ¶ 28, with Plaintiff's Response (Docket Entry No. 98), at 13-14; and Declaration of Christopher Thorsen (Docket Entry No. 73-4), at ¶ 4.

parties to continue as long as certain obligations under the contract continue. See Johnson v. Welch, 2004 WL 239756, **9-16 (Tenn.Ct.App. Feb. 9, 2004). Furthermore, a party's unilateral termination of a contract does not relieve the party from liability for damages caused by his termination or foreclose the other party from seeking a claim based upon breach of the contract. See McClain v. Kimbrough Const. Co., Inc., 806 S.W.2d 194, 199 (Tenn.Ct.App. 1990); Johnson, supra.

The factual issues surrounding whether the purported contract between the Plaintiff and the Defendant was breached by the Defendant or was lawfully terminated at some point after March 2008, because the Defendant no longer used the Formulas and, thus, the activity upon which the continuing obligation to pay had stopped, are simply unresolved and contested issues. The Plaintiff's declaration and discovery responses are sufficient to support his position that the Defendant was still using the formulas and thus, continuing payments were due to the Plaintiff after March 2008. See Docket Entry No. 76, at ¶¶21 and 24; and Docket Entry No. 57-3, at ¶ 13.[5] As the non-moving party, the Plaintiff is entitled to have the facts and all inferences to be drawn therefrom viewed in the light most favorable to him. Matsushita Elec. Indus. Co., supra. Based on the record before the Court, the Court cannot say that the facts are so one-sided that they favor the Defendant and require summary judgment on the Plaintiff's breach of contract claim. Accordingly, summary judgment in favor of the Defendant is not warranted on this issue.

---

[5] Although the Defendant refers to the Plaintiff's declaration statement as a "made-up allegation," see Docket Entry No. 102, at 6, the Defendant's mere belief that the statement is untrue, no matter how vigorously asserted by the Defendant, does not render the Plaintiff's statements any less a measure of supporting evidence than the statements made by the Defendant. Weighing the credibility of the parties is not appropriate in the context of considering a motion for summary judgment.

Although summary judgment in favor of the Defendant is not warranted on the issue of whether a breach of contract has occurred, it is apparent that the Plaintiff has presented differing statements of the period for which he is seeking damages in this action. Although in the Amended Complaint the Plaintiff requests relief going back to 1995, see Docket Entry No. 17, at ¶13, the Defendant points to statements made by the Plaintiff at his deposition indicating that he is not seeking relief for amounts that could have been owed prior to March 2008. See Plaintiff's Deposition (Docket Entry No. 57-1), at 12-13. The Defendant further provides written discovery responses from the Plaintiff which the Defendant maintains are additional support for the contention that the Plaintiff is not seeking damages for any amounts that may have been owed prior to March 2008. See Plaintiff's Response to Requests for Admissions (Docket Entry No. 57-2), at ¶ 4; Plaintiff's Response to Interrogatories (Docket Entry No. 57-3), at ¶ 6. In response, the Plaintiff asserts that the documents he received in discovery lead him to believe that he has been defrauded by the Defendant and "he now rescinds his statement that he was paid in full through March 2008 as he was unknowingly deceived by the Defendant . . . [but] If the statements cannot be rescinded, then the Plaintiff can live with that." See Docket Entry No. 98, at 10-11. Nonetheless, the Plaintiff specifically sets out in his Response that he is seeking damages from 2007 forward. See Docket Entry No. 98, at 23. He further admits in his Response to the Defendant's Statement of Undisputed Material Facts that he is not seeking any damages in this suit for amounts that could have been owed to Plaintiff prior to April of 2008. See Docket Entry No. 99, at ¶ 18.

A party cannot create genuine issues of material fact by making statements subsequent to his deposition that contradict his own prior deposition testimony. See Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir. 1986). Additionally, when a party's deposition testimony contradicts

the content of his own complaint, the Court should rely on the later testimony of the plaintiff. See Leary v. Livingston Cnty., 528 F.3d 438, 444 (6th Cir. 2008). The Plaintiff should be bound by his deposition statement and by his subsequent filings affirming his intent to seek monetary damages only for payments that may have been due under the purported contract subsequent to the final payment made by the Defendant in March 2008. Accordingly, any monetary damages in this action for breach of contract should be limited to the time period of April 2008, to the present.

The Defendant devotes part of its motion for summary judgment to arguing that the Plaintiff is not entitled to relief under any cause of action other than breach of contract and an accounting and seeks dismissal of any other potential claims that could have been pled. The Court agrees with the Defendant that the Plaintiff's Amended Complaint specifically sets out only a claim for breach of contract and a request for an accounting. Any other possible claims that may arise from the facts of this action have not been pled by the Plaintiff and are not a part of this action. The Court is not required to "create [Plaintiff]'s claims for him" by reading the Plaintiff's Amended Complaint to include all potential claims. See Bell v. Tennessee, 2012 WL 996560, *9 (E.D. Tenn. Mar. 22, 2012) (quoting Thompson v. A.J. Rose Mfg. Co., 208 F.3d 215 (6th Cir. 2000)). Although the Defendant requests a dismissal of "all cause of action related to Plaintiff's meritless allegations," see Docket Entry No. 55, at 9, n.2, the Court shall not analyze or review claims the Plaintiff has not pled.

As to the Plaintiff's request for an accounting, the Defendant argues that the Plaintiff's inability to establish his contract claim against the Defendant requires dismissal of the request for an accounting. Because the Court finds that genuine issues of material fact exist on the Plaintiff's breach of contract claim that require resolution by the trier of fact, the Defendant's request for

15

dismissal of the accounting claim, which is essentially a claim for extraordinary equitable relief, necessarily lacks merit.

## RECOMMENDATION

For the reasons set out above, the Court respectfully RECOMMENDS that the Defendant's motion for summary judgment (Docket Entry No. 54) be DENIED and that this action be set for a trial by jury.

Although summary judgment in favor of the Defendant should be denied, as set out herein, the Plaintiff's claims for monetary damages in this action should be limited to the time period of April 2008, to the present.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge